UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERRELL ROSEBORO,<br>    *Plaintiff*,<br><br>v.<br><br>STEPHEN FAUCHER; WARDEN BOWLES; DEPUTY WARDEN BLANCHARD; AND DR. JOHN DOE,<br>    *Defendants*. | No. 3:21-cv-569 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Jerrell Roseboro ("Plaintiff"), who was formerly an inmate incarcerated at Brooklyn Correctional Institution ("Brooklyn") and is proceeding *pro se*, has sued various officials and employees of the Connecticut Department of Correction ("DOC"), asserting claims for violations of his civil rights under 42 U.S.C. § 1983. Compl., ECF No. 1.

After an initial review under 28 U.S.C. § 1915A, the Court permitted Mr. Roseboro to proceed on his Eighth Amendment damages claims for (1) failure to safeguard him from exposure to coronavirus disease 2019 ("COVID-19") against Brooklyn Warden Stephen Faucher, Dr. John Doe, Northern Correctional Institution ("Northern") Deputy Warden Blanchard, and Northern Warden Bowles; (2) deliberate indifference to unconstitutional conditions of confinement against Warden Faucher and Warden Bowles; and (3) deliberate indifference to Mr. Roseboro's medical needs while confined at Northern against Warden Bowles. Initial Review Order at 15, ECF No. 15 ("IRO").[1]

---

[1] Mr. Roseboro's Eighth Amendment claim against Dr. John Doe is dismissed because Mr. Roseboro failed to identify and serve this Defendant as directed in the Court's Initial Review Order. IRO at 16–17. The Court's Initial Review Order informed Mr. Roseboro that he was responsible for identifying and serving Dr. John Doe in his individual capacity. *Id.* It further advised Mr. Roseboro that his failure to identify and effect service on Dr. Doe within the specified time period will result in a dismissal of this action against Dr. Doe. *Id.*

The Initial Review Order did not address the plausibility of any state law claims, and so the Court also permitted Mr. Roseboro to proceed on his claims for intentional infliction of emotional distress under state law. *See id.* at 1 n. 2, 15.

Defendants have filed a motion for summary judgment, arguing that Mr. Roseboro failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") before filing his Complaint. Defs.' Mot. for Summ. J., ECF No. 48.

For the following reasons, Defendants' motion for summary judgment is **DENIED**.

Any further dispositive motions addressing the merits of Mr. Roseboro's claims shall be filed by **March 10, 2023**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background[2]

The following factual background reflects the Court's review of the Complaint,[3] the parties' Local Rule 56(a) statements of fact, and all supporting materials.[4] *See* Compl.; Defs.' L.R. 56(a)(1) Statement, ECF No. 48-2 ("Defs.' SMF").

---

[2] Generally, the Court cites only the relevant paragraph in the Local Rule 56(a)1 Statement when a fact is not disputed. The page numbers cited in this ruling for any document that has been electronically filed refer to the page numbers generated by the electronic case filing system and not to the page numbers of the original documents, if any.

[3] "[A] verified complaint . . . may be considered as an affidavit" for summary judgment purposes. *Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *3 (D. Conn. Oct. 9, 2019).

[4] Defendants provided Mr. Roseboro with a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice to *Pro Se Litigant*, ECF No. 48-3. District of Connecticut Local Civil Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

1. **Allegations of the Complaint**

In his Complaint, Mr. Roseboro alleges the following facts relevant to his Eighth Amendment claims.

Defendants Faucher, Blanchard, and Bowles each allegedly failed to prepare for the impact of COVID-19, deliberately ignoring executive orders issued by Governor Ned Lamont and guidelines from the Centers for Disease Control and Prevention ("CDC"). Compl. ¶¶ 5–6.

At Brooklyn in April 2020, Defendants Faucher and Blanchard allegedly failed to enforce a mask mandate; failed to monitor staff who were asymptomatic but COVID-19 positive; failed to prohibit noncompliant employees from working at Brooklyn; and failed to facilitate social distancing by addressing overcrowding in dorms. *Id.* ¶¶ 7–10. Warden Faucher allegedly failed to respond to Mr. Roseboro's inmate request complaining about mask noncompliance. *Id.* ¶ 7. Allegedly, correctional officers continued to engage in mask noncompliance up to the time Mr. Roseboro filed his Complaint in April 2021. *Id.* ¶ 9. Defendants Faucher and Blanchard allegedly threatened inmates with transfer to Northern to intimidate them into remaining quiet about their symptoms so that reported numbers of infected inmates would be lower. *Id.* ¶¶ 12–13. Defendants allegedly treated the virus as if it were a common cold. *Id.* Mr. Roseboro allegedly made a request to Defendants Blanchard and Faucher to be moved out of his dorm because inmates were sick, but he was told that COVID-19 was only a cold. *Id.*

On May 18, 2020, Mr. Roseboro allegedly was found to have an elevated heart rate and temperature and was moved to the gym, where he allegedly tested positive for COVID-19. *Id.* ¶ 14. He allegedly had to live for three days in a plastic or rubber box that was the size of an oversized dresser drawer without the ability to take a shower or bathe. *Id.* ¶ 15. Mr. Roseboro

also alleges that inmates had to sleep head-to-head on the floor, had no soap or cleaning materials, suffered from poor ventilation, and lacked toilet paper. *Id.*

After three days of being housed in the gym, where he was denied clean clothing, sheets, and showers, Mr. Roseboro was allegedly transferred to Northern to quarantine and receive medical care. *Id.* ¶ 19. At Northern, Mr. Roseboro's asthma allegedly worsened, and he felt as if he could not breathe. *Id.* His medical treatment allegedly amounted to no treatment. *Id.* ¶ 20.

Mr. Roseboro alleges that he repeatedly complained about his symptoms to Northern Warden Bowles, correctional staff, and medical staff. *Id.* He allegedly was not provided with any breathing treatment, medication for migraines, or fluids. *Id.* He allegedly was forced to eat his food on the toilet or the floor; lacked cleaning supplies; had to wash his clothing in the same sink that he had to drink out of; had to use his sock instead of toilet paper; and was placed in a cell with another inmate with different COVID-19 symptoms. *Id.* Mr. Roseboro further alleges that he was denied daily showers, clean clothing, and clean sheets. *Id.* Mr. Roseboro's requests for assistance allegedly were ignored. *Id.*

During his twelve days at Northern, Mr. Roseboro allegedly was handcuffed each time he used the telephone or shower and was treated as though he was a high-risk Level 5 inmate who had committed an offense against staff, even though he allegedly was a Level 3 inmate. *Id.* ¶ 23. Mr. Roseboro allegedly filed grievances while at Northern and Brooklyn, but Wardens Faucher and Bowles allegedly ignored his complaints. *Id.* ¶ 20.

Mr. Roseboro was allegedly returned to Brooklyn and then placed back in the dorm, where he was again at risk of harm because Warden Faucher and Deputy Warden Blanchard decided to house sick inmates with healthy inmates by. *Id.* ¶¶ 21–22.

### 2. Administrative Remedies

Correction Officer Stephanie Siena is the keeper of Inmate Grievance Records for Northern, which is now closed. Defs.' SMF ¶ 1. She states that she reviewed the grievance logs for Northern from July 1, 2019, to June 30, 2021. Siena Decl. ¶ 6, ECF No. 48-4. According to Officer Siena, the grievance log does not contain any administrative filings by Mr. Roseboro at Northern during that time period. *Id.* ¶ 7.

Counselor Kendra Collins was the Administrative Remedies Coordinator ("ARC") for Brooklyn during the time relevant to Mr. Roseboro's claims. Defs.' SMF ¶ 2. As part of her duties, Counselor Collins was the keeper of records for inmate administrative remedy requests at Brooklyn. *Id.* She states in her declaration that a staff member picks up inmate grievances from the administrative remedies box on a daily basis during the week and then logs the grievance into the grievance log upon receipt. Collins Decl. ¶ 6, ECF No. 48-6. Counselor Collins states that she is also responsible for maintaining the grievance log. *Id.* She asserts that she has reviewed the Brooklyn grievance log for remedies filed from July 1, 2019, to June 30, 2021, and identified three Level 1 grievances filed by Mr. Roseboro during that time period. *Id.* ¶ 7

Mr. Roseboro filed the first of these grievances on July 30, 2020, on form CN 9602, complaining about the timeliness of his receipt of copies after a request. Defs.' SMF ¶ 6. This grievance was rejected on the grounds that it was proper under the Administrative Directives for Mr. Roseboro's counselor to require full payment of photocopying fees before providing documents to Mr. Roseboro. *Id.* ¶ 7. Mr. Roseboro did not file a Level 2 grievance to appeal the rejection of his Level 1 grievance. *Id.* ¶ 8.

On August 20, 2020, Mr. Roseboro filed a second Level 1 grievance on form CN 9602, complaining about the denial of his request to possess certain photographs that had been

5

determined to be sexually explicit. *Id.* ¶¶ 9–10. This grievance was returned without disposition on August 24, 2020. *Id.* ¶ 11.

On August 26, 2020, Mr. Roseboro filed a third Level 1 grievance on form CN 9602, complaining again about the denial of his request to possess certain photographs. *Id.* ¶ 12. On September 9, 2020, Mr. Roseboro filed a CN 9607 to withdraw this grievance. *Id.* ¶ 13.

Colleen Gallagher is the designee for the Health Services Division of the health service reviews, or "medical grievances" filed by inmates under DOC Administrative Directive 8.9 at all facilities. *Id.* ¶ 15. Under Administrative Directive 8.9, an inmate dissatisfied with a diagnosis or medical treatment can file a health service review administrative remedy. *Id.* ¶ 17. DOC maintains an electronic log of all health service review administrative remedies. *Id.* ¶ 17.

Ms. Gallagher states that she made "a thorough review for any and all health service review requests filed by Jerrell Roseboro #238689." Gallagher Decl. ¶ 14, ECF No. 48-7. Her search returned one health service review filed by Mr. Roseboro in 2019, which contained a request to see a podiatrist for his infected toe. *Id.* ¶ 15.

**B.    Procedural History**

On April 26, 2021, Mr. Roseboro filed his *pro se* Complaint and a motion for leave to proceed *in forma pauperis*. Compl.; Mot. for Leave to Proceed in Forma Pauperis, ECF No. 2.

On May 8, 2021, Mr. Roseboro filed a motion asking the Court to issue an order to show cause for a temporary restraining order and preliminary injunction to provide him with adequate and safe protective measures to mitigate the spread of the COVID-19 virus and to prevent inmates' exposure to the virus. Mot. to Show Cause, ECF No. 8.

On May 19, 2021, the Court denied Mr. Roseboro's motion to proceed *in forma pauperis* and directed him to pay the Court's filing fee. Order, ECF No. 9. Mr. Roseboro complied with this order on June 17, 2021.

On November 4, 2021, the Court issued an Initial Review Order determining that Mr. Roseboro had alleged plausible Eighth Amendment claims for failure to safeguard him from exposure to COVID-19; deliberate indifference to his conditions of confinement;[5] and deliberate indifference to his medical needs while confined at Northern. IRO.

On November 16, 2021, the Court denied Mr. Roseboro's motion for an order to show cause because he had not alleged any ongoing constitutional violation that could be remedied by injunctive relief. Order, ECF No. 18.

On December 6, 2021, Mr. Roseboro filed a motion seeking help from the Court to serve Defendants. Mot. for Help, ECF No. 20. The Court denied the motion but appointed Mr. Roseboro *pro bono* counsel for the limited purpose of effecting service on Defendants. Order, ECF No. 21.

On March 23, 2022, counsel for Defendants Blanchard, Bowles and Faucher filed a notice of appearance. Notice, ECF No. 32. Defendants then filed their answer to the Complaint on April 6, 2022. Answer, ECF No. 37.

On April 13, 2022, Mr. Roseboro filed a motion for clarification, stating that he was waiting for discovery and would like to amend his Complaint after discovery was completed. Mot. for Clarification, ECF No. 39. The next day, the Court granted the motion for clarification, explaining that Mr. Roseboro could amend his Complaint as a matter of course by April 27,

---

[5] The Court concluded in its Initial Review Order that Mr. Roseboro's complaint about his lack of exercise did not rise to the level of a constitutional violation. IRO at 13–14.

2022, but that "leave to file an amended complaint . . . may not be granted" after that date. Order, ECF No. 40. Mr. Roseboro has not, however, filed any amended complaint.

On May 23, 2022, Defendants filed a motion for order and leave to bifurcate pretrial proceedings, requesting leave to file a motion for summary judgment limited to the question of Mr. Roseboro's compliance with the PLRA's exhaustion requirement without prejudice to filing another summary judgment motion at a later date. Mot. for Order, ECF No. 41.

On June 6, 2022, the Court granted Defendants' motion and instructed Defendants to file their motion for summary judgment on non-exhaustion grounds by July 8, 2022. Order, ECF No. 43. The Court indicated in this Order that Defendants could file a motion for summary judgment on the merits within thirty days after the Court issued its ruling on the issue of exhaustion. *Id.*

On July 8, 2022, Defendants filed their motion for summary judgment on the limited issue of Mr. Roseboro's compliance with the PLRA's exhaustion requirement. Defs.' Mot. for Summ. J.; Mem. of Law in Supp. of Defs.' Mot. for Summ. J., ECF No. 48-1 ("Mem.").

On August 12, 2022, Mr. Roseboro filed his memorandum in opposition to the motion for summary judgment. Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 51 ("Opp'n").

On September 1, 2022, Defendants filed a reply to Mr. Roseboro's opposition. Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 52 ("Reply").

On September 6, with the Court's permission, Mr. Roseboro filed a sur-reply. Pl.'s Sur-Reply to Defs.' Opp'n, ECF No. 56 ("Sur-Reply"); Order, ECF No. 55 (Sept. 2, 2022); Mot. to File, ECF No. 53 (Sept. 1, 2022).

On September 13, also with the Court's permission, Defendants filed a response to Mr. Roseboro's sur-reply. Defs.' Resp. to Pl.'s Sur-Reply, ECF No. 57 (Sept. 13, 2022) ("Sur-Sur-Reply").

On November 21 and December 2, 2022, Mr. Roseboro filed notices of his new address, which showed that he was no longer in the custody of a DOC correctional facility. Notice, ECF No. 61; Notice, ECF No. 62.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by

9

documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

### III. DISCUSSION

Defendants argue in their motion for summary judgment that Mr. Roseboro has not exhausted the administrative remedies relevant to his Eighth Amendment claims in this action. Mem. at 9–10. Mr. Roseboro opposes Defendants' motion. Opp'n.

#### A. The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process, *Booth v. Churner*, 532 U.S. 731, 738 (2001).

The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that the inmate must comply with all "procedural rules," including filing deadlines, required by the particular prison grievance system. *Id.* at 90–91. "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement may be excused, however, when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The Supreme Court has identified three types of circumstances in which

11

an administrative procedure is unavailable and, therefore, need not be exhausted: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants "bear the initial burden of establishing . . . that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59. "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id.*

B.  **Administrative Directive 9.6**

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U. S. at 218. A plaintiff in DOC custody who asserts claims based on correctional staff's deliberate indifference to his health and safety due to unconstitutional conditions of confinement generally must exhaust his remedies through the grievance procedures

12

set forth in DOC Administrative Directive 9.6 ("A.D. 9.6"). At all times relevant to this action, the version of A.D. 9.6 in effect was the revision dated August 15, 2013.[6]

Before an inmate can file a grievance under A.D. 9.6, he must first seek "informal resolution." A. D. 9.6(6)(A). The inmate must attempt to "resolve the issue verbally" and, if this effort is unsuccessful, must "submit a written request via form CN 9601." *Id.*

If these informal resolution steps are unsuccessful, the inmate may file a Level 1 grievance using form CN 9602, which must be submitted within thirty calendar days after the occurrence or discovery of the cause of the grievance. A.D. 9.6(6)(C). The grievance must include documentation of the inmate's written request to resolve the matter informally or an explanation of why such documentation is not attached. *Id.* The Unit Administrator is required to respond in writing to a Level 1 grievance within thirty business days of receipt of the grievance. A.D. 9.6(6)(I).

An inmate may appeal to Level 2 if the Unit Administrator either denies a Level 1 grievance or fails to respond to the grievance in a timely manner. A.D. 9.6(6)(G), (I), (K). When the Administrator denies a Level 1 grievance, the Level 2 appeal must be filed within five calendar days of the inmate's receipt of the Administrator's decision. A.D. 9.6(6)(K). When the Administrator fails to respond to a Level 1 grievance in a timely manner, the Level 2 appeal must be filed within sixty-five days of the date the Level 1 grievance was filed. A.D. 9.6(6)(M).

---

[6] Defendants have not submitted the relevant version of Directive 9.6, effective August 15, 2013 (which was superseded by the most recent version effective April 30, 2021). Defendant's assert in their motion that A.D. 9.6 may be accessed through the DOC website at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf?la=en. Mem. at 7 n.5. This link, however, directs only to the current April 30, 2021 version of A.D. 9.6, which became effective after Mr. Roseboro filed this action. Nevertheless, the Court takes judicial notice of a copy of the relevant version of Directive 9.6 that was submitted as exhibit F to the defendant's motion for summary judgment in *Green v. Caron*, 3:21-cv-269 (MPS), ECF No. 32-9.

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L). Thus, an inmate who properly appeals to Level 2 typically satisfies the PLRA's exhaustion requirement.

### C. Mr. Roseboro's Compliance with the Exhaustion Requirement

In support of their motion for summary judgment, Defendants have submitted, *inter alia*, declarations from Officer Siena, the keeper of Inmate Grievance Records for Northern; Counselor Collins, the ARC for Brooklyn; and Ms. Gallagher, the Health Service Division's designee for medical grievances. Siena Decl., ECF Nos. 48-4, 48-5; Collins Decl., ECF No. 48-6; Gallagher Decl, ECF No. 48-7. They have also submitted copies of three Level 1 Grievances filed by Mr. Roseboro regarding his copy requests and photographs, and the grievance logs from Northern and Brooklyn. *See id.*

Relying on this evidence, Defendants argue that Mr. Roseboro failed to exhaust his administrative remedies because he never filed an informal inmate request form or a Level 1 grievance about any claims related to COVID-19. *See* Mem. at 9.

In response, Mr. Roseboro contends that his efforts to exhaust his administrative remedies were thwarted by DOC staff. Roseboro Decl. ¶ 48, ECF No. 51-2. As noted above, a plaintiff bears the burden of showing by competent evidence that an administrative procedure was unavailable. *See Hubbs*, 788 F.3d at 59. Here, Mr. Roseboro seeks to support his claim through his declaration and additional exhibits.

In his declaration, Mr. Roseboro states that he submitted inmate requests about his concerns regarding COVID-19 and conditions and that these requests were never returned. Roseboro Decl. ¶¶ 6–8, 13, 26, 31, 33. He asserts that Deputy Warden Blanchard and Warden

14

Faucher told him they were tired of receiving his inmate request forms and would place him in segregation if he continued to submit them, *id.* ¶ 16, and that Warden Bowles refused to accept his written request or provide him with a grievance form, *id.* ¶¶ 33–34. According to Mr. Roseboro, Warden Bowles also stated that he would not act on Mr. Roseboro's complaints because Mr. Roseboro was only at Northern on a temporary quarantine. *Id.* ¶ 32.

As to his purported failure to file any grievances, Mr. Roseboro states that he submitted a Level 1 grievance about his conditions of confinement at Northern just before his transfer back to Brooklyn. *Id.* ¶¶ 36–38. He asserts that, during the week of June 21, 2020, he learned from Counselor Collins that she had no record of that grievance; that he then submitted another Level 1 grievance, which included a complaint about his exposure to COVID-19 upon returning to a Brooklyn dorm; and that Counselor Collins returned this grievance to him on June 26, 2020, with an instruction to re-file it because of a spelling error. *Id.* ¶¶ 41–43.

Mr. Roseboro states that he re-filed this grievance about COVID-19 exposure on June 30, 2020, but that Counselor Collins again returned the grievance three days later without disposition and with an instruction to re-file it. *Id.* ¶ 44. According to his declaration, Mr. Roseboro once again re-filed his grievance on July 7, 2020, but Counselor Collins returned it to him because of another incorrect spelling on July 10, 2020. *Id.* ¶ 45. Mr. Roseboro states that he "re-did the grievance as told to [him] by 'Collins'" and filed it on July 15, 2020, but that he never received a receipt. *Id.* ¶ 46. He further describes how he heard nothing further from Counselor Collins about his grievance, although she represented that she would get back to him when her investigation was done. *Id.* ¶¶ 46, 48.

Mr. Roseboro states that he then filed a Level 2 grievance based on Counselor Collins's failure to process his Level 1 grievances. But according to Mr. Roseboro's Declaration,

15

Counselor Collins refused to process his grievances that criticized her behavior. *Id.* ¶¶ 54–55. *See* A. D. 9.6(6)(M) (when a Level 1 grievance is not timely disposed, an inmate may file a Level 2 grievance within 65 days from the date the Level 1 grievance was filed).

Because he had been thwarted by the administrative grievance process, Mr. Roseboro states that he also filed a complaint on July 15, 2020, with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Roseboro Decl. ¶¶ 49–50. Mr. Roseboro has attached to his opposition this CHRO complaint, which asserted claims similar to those alleged in the instant action regarding his placement in the Brooklyn gym, conditions at Brooklyn and his exposure to COVID-19, his transfer to Northern and conditions there, denial of his request to see a doctor, and denial of access to the grievance process. Ex. 2 to Opp'n at 24, ECF No. 51-1 ("CHRO Complaint"). The attached CHRO decision determined that "no reasonable cause for believing that a discriminatory practice" had occurred as alleged. Ex. 4 to Opp'n at 29–34, ECF No. 51-1 ("CHRO Decision").

In response to this evidence, Defendants maintain that Mr. Roseboro has not adequately supported his claim of unavailability, arguing that Mr. Roseboro's assertions are too "general" and "unsubstantiated." Reply at 3-4.

The Court disagrees.

Defendants are correct that Mr. Roseboro cannot rely on "conclusory allegations or unsubstantiated speculation" to establish a genuine issue of material fact as to unavailability. *Simmons v. Sheckler*, No. 3:16-cv-01224 (JCH), 2018 WL 3596748, at *3 (D. Conn. July 26, 2018). But that is not all that Mr. Roseboro has presented here. First, his declaration provides detailed assertions of fact—including dates and specific named individuals—describing how he

16

attempted but was unable to exhaust his claims through both informal inmate requests and the formal grievance procedures.

Second, and even more significantly, the CHRO decision attached to Mr. Roseboro's opposition refers to a grievance filed by Mr. Roseboro that "lists similar complaints that were contained in the CHRO complaint" and was "rejected . . . because it did not follow the required format." CHRO Decision at 33, ECF No. 51-1. The CHRO decision goes on to explain that this grievance was produced by DOC. *Id.* Thus, Mr. Roseboro's evidence appears to corroborate his assertion that he filed a grievance raising concerns about his exposure to COVID-19, his conditions of confinement, and lack of medical care at Northern and that this grievance was in DOC's possession.

Neither Officer Siena nor Counselor Collins identified the grievance mentioned in the CHRO decision in their review of grievance logs. *See* Siena Decl. ¶¶ 6–7; Collins Decl. ¶¶ 7–9.[7] Officer Siena and Counselor Collins submitted their respective facility grievance logs in support their declarations, but the names in these logs are redacted for all entries except for Mr. Roseboro's three unrelated grievances. *See* Ex. 1 to Siena Decl. at 5–43, 1–43, ECF Nos. 48-4, 48-5; Ex. 1 to Collins Decl. at 5–32, ECF No. 48-6. Thus, Defendant's evidence cannot establish conclusively that Mr. Roseboro did not submit any other grievances, and the Court cannot consider Officer Siena's and Counselor Collins's assertions regarding the existence of these grievances to be undisputed. Nor can the Court speculate as to the reason for the declarants' apparent failure to identify the grievance referenced in the CHRO decision.

---

[7] The grievance logs attached to Siena's and Collins's declarations include grievances that were not resolved on the merits. *See, e.g.*, Ex. 1 to Collins Decl. at 15, ECF No. 48-6. Thus, the fact that Mr. Roseboro's grievances were returned without disposition does not explain their purported absence from the grievance logs.

Although the Court cannot determine the exact contents of the grievance referenced by the CHRO or the other grievances purportedly filed by Mr. Roseboro, the inconsistency in the record before the Court raises a triable question of fact as to whether the grievance mentioned by the CHRO and the other grievances identified in Mr. Roseboro's declaration were properly processed or logged.[8]

This conclusion does not end the analysis, however. Defendants argue that, even if Mr. Roseboro was thwarted in his efforts to file a Level 1 grievance, he should have nonetheless filed a Level 2 appeal. *See* Sur-Sur-Reply at 2. Defendants contend that he failed to do so and that this failure prevents Mr. Roseboro from satisfying the exhaustion requirement.

The Court disagrees.

With respect to the grievances that were returned without disposition based on spelling mistakes or other errors, the relevant version of A.D. 9.6 does not permit an inmate to file a Level 2 appeal when a grievance is returned without disposition. *See* A.D. 9.6(6)(G); *Carolina v. Feder*, No. 3:20-cv-658 (SRU), 2021 WL 268854, at *13 (D. Conn. Jan. 26, 2021) ("If an inmate's Level 1 grievance is returned without disposition for failure to comply with procedural requirements, the inmate may not appeal that decision but may, instead, correct the error and re-file the grievance." (citing A.D. 9.6(6)(E), (G) (effective August 15, 2013))).

Mr. Roseboro does assert that one grievance, filed on July 15, 2020, was not returned without disposition when Counselor Collins stated that she would get back to him after completing her investigation but never did. *See* Roseboro Decl. ¶ 48. A.D. 9.6 specifically contemplates that prison administrators may fail to respond to an inmate's Level 1 grievance

---

[8] Defendants maintain that the administrative remedy log shows that the process was available and utilized by other inmates during the relevant timeframe. Sur-Sur-Reply at 2. But the fact that other inmates had their administrative remedies processed does not establish conclusively that Mr. Roseboro's administrative remedies were also being processed.

within thirty business days and provides an administrative remedy for such a scenario. When an administrator fails to respond to a Level 1 grievance within this timeframe, an inmate is permitted to file a Level 2 grievance and must do so within sixty-five days of the filing date for his original grievance. *See* A. D. 9.6(6)(I), (M). But Mr. Roseboro asserts that he was thwarted once again when he attempted to comply with this requirement: he states that he filed a Level 2 grievance but that Counselor Collins would not permit any grievance "regarding her misconduct" to be processed. *See* Roseboro Decl. ¶¶ 54–55. And according to Mr. Roseboro's declaration, Counselor Collins, as the only staff member who would pick up grievances from the grievance box, had the ability to block his Level 2 grievance. *See id.* ¶ 55.

Thus, construing this evidentiary record in the light most favorable to the non-moving party, Mr. Roseboro has raised genuine issues of material fact as to whether administrative remedies were available to him or whether prison staff thwarted his efforts to avail himself of these remedies. *See Ross*, 578 U. S. at 639 (exhaustion not required when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

Accordingly, the Court will deny Defendants' motion for summary judgment as to Mr. Roseboro's exhaustion of administrative remedies.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on non-exhaustion grounds is **DENIED**.

---

[9] If the Court determines at a later stage that Mr. Roseboro's claims should proceed on the merits to a jury, the Court will convene a hearing before trial to resolve the questions of fact necessary to determine whether Mr. Roseboro was required to exhaust his administrative remedies. *See Morgan v. Watson*, No. 3:20-CV-00254, 2022 WL 17986695, at *4 (D. Conn. Dec. 29, 2022) ("Exhaustion is a question of law that must be decided by the Court, not by a jury." (citing *Messa v. Goord*, 652 F.3d 305, 308–310 (2d Cir. 2011))).

Any further dispositive motions addressing the merits of Mr. Roseboro's claims shall be filed by **March 10, 2023**.

Mr. Roseboro's Eighth Amendment claim against unnamed Defendant Dr. John Doe is **DISMISSED**.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE