# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JERRELL ROSEBORO,
     *Plaintiff*,

     v.

WARDEN STEPHEN FAUCHER;
WARDEN BOWLES; and DEPUTY
WARDEN BLANCHARD,
     *Defendants.*

No. 3:21-cv-569 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Jerrell Roseboro ("Plaintiff"), who was formerly an inmate incarcerated at Brooklyn Correctional Institution ("Brooklyn") has sued various officials and employees of the Connecticut Department of Correction ("DOC"), asserting claims for violations of his civil rights under 42 U.S.C. § 1983. Compl., ECF No. 1.

After an initial review under 28 U.S.C. § 1915A, the Court permitted Mr. Roseboro to proceed on his Eighth Amendment damages claims for (1) failure to safeguard him from exposure to coronavirus disease 2019 ("COVID-19") against Brooklyn Warden Stephen Faucher, Dr. John Doe, Northern Correctional Institution ("Northern") Deputy Warden Blanchard, and Northern Warden Bowles; (2) deliberate indifference to unconstitutional conditions of confinement against Warden Faucher and Warden Bowles; and (3) deliberate indifference to Mr. Roseboro's medical needs while confined at Northern against Warden Bowles. Initial Review Order at 15, ECF No. 15 ("IRO").

The Initial Review Order did not address the plausibility of any state law claims, and so the Court also permitted Mr. Roseboro to proceed on his claims for intentional infliction of emotional distress ("IIED") under state law. *See id.* at 1 n. 2, 15.

Defendants' first motion for summary judgment on non-exhaustion grounds was denied by the Court, while Mr. Roseboro's claims against Dr. John Doe were dismissed for a failure to identify and effect service. Order Denying Mot. for Summ. J., ECF No. 63.

Now, Defendants have filed their second motion for summary judgement, arguing that (1) Mr. Roseboro's claims against Warden Blanchard must be dismissed due to her lack of personal involvement in any of the claims, (2) Mr. Roseboro's Eighth amendment and IIED claims fail as a matter of law, and (3) Defendants are entitled to qualified immunity because their actions were both objectively reasonable under the circumstances and did not violate "clearly established" law. Defs.' Sec. Mot. for Summ. J., ECF No. 87 ("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.

Mr. Roseboro's claim for deliberate indifference as to his serious medical needs against Warden Faucher survives on the limited issue of whether Warden Faucher's alleged meetings with Mr. Roseboro without a mask during a peak COVID-19 period created a basis for liability.

Summary judgment is granted to all other claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

The following factual background reflects the Court's review of the Complaint,[2] the parties' Local Rule 56(a) statements of fact, and all supporting materials. *See* Compl.; Defs.'

---

[1] The page numbers cited in this ruling for any document that has been electronically filed refer to the page numbers generated by the electronic case filing system and not to the page numbers of the original documents, if any.
[2] "[A] verified complaint . . . may be considered as an affidavit" for summary judgment purposes. *Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *3 (D. Conn. Oct. 9, 2019).

L.R. 56(a)(1) Statement, ECF No. 87-2 ("Defs.' SMF"); Pl.'s L.R. 56(a)(2) Statement, ECF No. 93 ("Pl.'s SMF").

In his Complaint, Mr. Roseboro alleges the following facts relevant to his Eighth Amendment claims.

Wardens Faucher, and Bowles, and Deputy Warden Blanchard each allegedly failed to prepare for the impact of COVID-19, deliberately ignoring executive orders issued by Governor Ned Lamont and guidelines from the Centers for Disease Control and Prevention ("CDC"). Compl. ¶¶ 5–6.

At Brooklyn in April 2020, Warden Faucher and Deputy Warden Blanchard allegedly failed to enforce a mask mandate; failed to monitor staff who were asymptomatic but COVID-19 positive; failed to prohibit noncompliant employees from working at Brooklyn; and failed to facilitate social distancing by addressing overcrowding in dorms. *Id.* ¶¶ 7–10. Warden Faucher allegedly failed to respond to Mr. Roseboro's inmate request complaining about mask noncompliance. *Id.* ¶ 7. Correctional officers allegedly continued to engage in mask noncompliance up to the time Mr. Roseboro filed his Complaint in April 2021. *Id.* ¶ 9. Warden Faucher and Deputy Warden Blanchard allegedly threatened inmates with transfer to Northern to intimidate them into remaining quiet about their symptoms so that reported numbers of infected inmates would be lower. *Id.* ¶¶ 12–13. These Defendants allegedly treated the virus as if it were a common cold. *Id.* Mr. Roseboro allegedly made a request to Deputy Warden Blanchard and Warden Faucher to be moved out of his dorm because inmates were sick, but he was told that COVID-19 was only a cold. *Id.*

On May 18, 2020, Mr. Roseboro allegedly was found to have an elevated heart rate and temperature and was moved to the gym, where he allegedly tested positive for COVID-19. *Id.*

¶ 14. He allegedly had to live for three days in a plastic or rubber box that was the size of an oversized dresser drawer without the ability to take a shower or bathe. *Id.* ¶ 15. Mr. Roseboro also alleges that inmates had to sleep head-to-head on the floor, had no soap or cleaning materials, suffered from poor ventilation, and lacked toilet paper. *Id.*

After three days of being housed in the gym, where he was denied clean clothing, sheets, and showers, Mr. Roseboro was allegedly transferred to Northern to quarantine and receive medical care. *Id.* ¶ 19. At Northern, Mr. Roseboro's asthma allegedly worsened, and he felt as if he could not breathe. *Id.* His medical treatment allegedly amounted to no treatment. *Id.* ¶ 20.

Mr. Roseboro alleges that he repeatedly complained about his symptoms to Northern Warden Bowles, correctional staff, and medical staff. *Id.* He allegedly was not provided with any breathing treatment, medication for migraines, or fluids. *Id.* He allegedly was forced to eat his food on the toilet or the floor; lacked cleaning supplies; had to wash his clothing in the same sink that he had to drink out of; had to use his sock instead of toilet paper; and was placed in a cell with another inmate with different COVID-19 symptoms. *Id.* Mr. Roseboro further alleges that he was denied daily showers, clean clothing, and clean sheets. *Id.* Mr. Roseboro's requests for assistance allegedly were ignored. *Id.*

During his twelve days at Northern, Mr. Roseboro allegedly was handcuffed each time he used the telephone or shower and was treated as though he was a high-risk Level 5 inmate who had committed an offense against staff, even though he allegedly was a Level 3 inmate. *Id.* ¶ 23. Mr. Roseboro allegedly filed grievances while at Northern and Brooklyn, but Wardens Faucher and Bowles allegedly ignored his complaints. *Id.* ¶ 20.

Mr. Roseboro was allegedly returned to Brooklyn and then placed back in the dorm, where he was again at risk of harm because Warden Faucher and Deputy Warden Blanchard decided to house sick inmates with healthy inmates. *Id.* ¶¶ 21–22.

### B. Procedural History

On April 26, 2021, Mr. Roseboro filed his *pro se* Complaint and a motion for leave to proceed *in forma pauperis*. Compl.; Mot. for Leave to Proceed in Forma Pauperis, ECF No. 2.

On May 8, 2021, Mr. Roseboro filed a motion asking the Court to issue an order to show cause for a temporary restraining order and preliminary injunction to provide him with adequate and safe protective measures to mitigate the spread of the COVID-19 virus and to prevent inmates' exposure to the virus. Mot. to Show Cause, ECF No. 8.

On May 19, 2021, the Court denied Mr. Roseboro's motion to proceed *in forma pauperis* and directed him to pay the Court's filing fee. Order, ECF No. 9. Mr. Roseboro complied with this order on June 17, 2021.

On November 4, 2021, the Court issued an Initial Review Order determining that Mr. Roseboro had alleged plausible Eighth Amendment claims for failure to safeguard him from exposure to COVID-19; deliberate indifference to his conditions of confinement;[3] and deliberate indifference to his medical needs while confined at Northern. IRO.

On November 16, 2021, the Court denied Mr. Roseboro's motion for an order to show cause because he had not alleged any ongoing constitutional violation that could be remedied by injunctive relief. Order, ECF No. 18.

On December 6, 2021, Mr. Roseboro filed a motion seeking help from the Court to serve Defendants. Mot. for Help, ECF No. 20. The Court denied the motion but appointed Mr.

---

[3] The Court concluded in its Initial Review Order that Mr. Roseboro's Complaint about his lack of exercise did not rise to the level of a constitutional violation. IRO at 13–14.

Roseboro *pro bono* counsel for the limited purpose of effecting service on Defendants. Order, ECF No. 21.

On March 23, 2022, counsel for the remaining Defendants filed a notice of appearance. Notice, ECF No. 32. Defendants then filed their Answer to the Complaint on April 6, 2022. Answer, ECF No. 37.

On April 13, 2022, Mr. Roseboro filed a motion for clarification, stating that he was waiting for discovery and would like to amend his Complaint after discovery was completed. Mot. for Clarification, ECF No. 39. The next day, the Court granted the motion for clarification, explaining that Mr. Roseboro could amend his Complaint as a matter of course by April 27, 2022, but that "leave to file an amended complaint . . . may not be granted" after that date. Order, ECF No. 40. Mr. Roseboro has not, however, filed an amended pleading.

On May 23, 2022, Defendants filed a motion for order and leave to bifurcate pretrial proceedings, requesting leave to file a motion for summary judgment limited to the question of Mr. Roseboro's compliance with the PLRA's exhaustion requirement without prejudice to filing another summary judgment motion at a later date. Mot. for Order, ECF No. 41.

On June 6, 2022, the Court granted Defendants' motion and instructed Defendants to file their motion for summary judgment on non-exhaustion grounds by July 8, 2022. Order, ECF No. 43. The Court indicated in this Order that Defendants could file a motion for summary judgment on the merits within thirty days after the Court issued its ruling on the issue of exhaustion. *Id.*

On July 8, 2022, Defendants filed their first motion for summary judgment on the limited issue of Mr. Roseboro's compliance with the PLRA's exhaustion requirement. Defs.' Mot. for Summ. J.; Mem. of Law in Supp. of Defs.' Mot. for Summ. J., ECF No. 48-1.

On March 10, 2023, the Court granted denied Defendants' first motion for summary judgment on exhaustion grounds while also dismissing Mr. Roseboro's Eighth Amendment claim against unnamed Defendant Dr. John Doe for failure to identify and effect service. Order Denying Mot. for Summ. J., ECF No. 63.

On May 16, 2024, Defendants filed their second motion for summary judgment seeking to dismiss Mr. Roseboro's Eighth Amendment and IIED claims and arguing that they are entitled to qualified immunity. Defs.' Mot. for Summ. J., ECF No. 87 ("Mot.").

On July 24, 2024, Mr. Roseboro filed his statement of material facts in opposition to Defendants' second motion for summary judgment. Pl.'s SMF, ECF No. 93.

On the same day, Mr. Roseboro filed his memorandum of law in opposition to Defendants' motion for summary judgment. Mem. of Law in Opp. of Defs.' Mot. for Summ. J., ECF No. 94 ("Mem.").

On August 7, 2024, Defendants filed a reply to Mr. Roseboro's opposition to the second motion for summary judgment. Reply to Pl.'s Opp. of Defs.' Mot. for Summ. J., ECF No. 95 ("Reply").

On August 29, 2024, Mr. Roseboro filed a sur-reply to Defendants reply to Mr. Roseboro's opposition to the second motion for summary judgment. Sur-Reply to Reply to Pl.'s Opp. of Defs.' Mot. for Summ. J., ECF No. 99 ("Sur-Reply").

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal

quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    DISCUSSION

Defendants argue that they are entitled to summary judgment because (1) Deputy Warden Blanchard lacks personal involvement in Mr. Roseboro's Eighth Amendment claim against her, (2) Mr. Roseboro's Eighth Amendment and IIED claims fail as a matter of law, and (3) Defendants are entitled to qualified immunity.

The Court will address each issue raised by Defendants' motion in turn.

### A.  The Issue of Personal Involvement

In order to properly allege a claim for damages under § 1983 a plaintiff must allege each defendant's personal involvement in the denial of his rights. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *see also Lawrence v. Finnucan*, No. 3:20-cv-1678 (VAB), 2021 U.S. Dist. LEXIS 87694, at *6 (D. Conn. May 7, 2021) ("As a preliminary matter, [a plaintiff] must allege each defendant's personal involvement in the denial of his rights").

Personal involvement means direct participation such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). A plaintiff cannot rely on a "separate test of liability specific to supervisors" and "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). After properly alleging personal involvement, a plaintiff "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

#### 1.  The Claims Against Warden Blanchard

The Defendants argue that Mr. Roseboro's claim of failure to protect against Deputy Warden Blanchard fails to adequately show personal involvement because: (1) Deputy Warden Blanchard was out sick with COVID-19 from April 18, 2020, to June 3, 2020, which includes the period from which the mask mandate started to when Mr. Roseboro contracted COVID-19

himself, (2) there is not adequate evidence proving that Deputy Warden Blanchard "failed to monitor staff who had tested positive and allow[ed] them to continue working," or that Deputy Warden Blanchard had the ability to prevent sick officers from entering the facility or move Plaintiff to a place with less COVID-19 exposure. *See* Mot. at 8–12.

In response, Mr. Roseboro presents evidence of Warden Blanchard's personal involvement by arguing that (1) Deputy Warden Blanchard, failed to enforce COVID-19 policies at all relevant times, and (2) that throughout March, April, and May of 2020 Mr. Roseboro had made written and oral complaints addressed to Deputy Warden Blanchard concerning the failure of Brooklyn CI officials to abide by the mask mandate which was required when social distancing was not possible. *See* Reply at 10, 11.

The Court disagrees.

Both pieces of evidence fail to create a genuine issue of fact as to Deputy Warden Blanchard's personal involvement.

While Mr. Roseboro states that correctional officers "would routinely complete their daily rounds without wearing masks," *See* Pl.'[s] SMF, ECF No. 93 ¶ 10; Roseboro Decl., ECF No. 93-1 ¶ 11.[4] Deputy Warden Blanchard was on sick leave from April 18, 2020, to June 3, 2020, which includes the period from which the mask mandate started (April 22, 2020) to when Mr. Roseboro contracted COVID-19 (May 2020), as even Mr. Roseboro concedes. *See* Pl.'[s] SMF, ECF No. 93 ¶ 50; Reply at 7–8. As a result, Deputy Warden Blanchard cannot have the requisite personal involvement with a policy he was not available to enforce, or could not enforce because it had not been issued yet. *Cf. Zeigler v. Annucci*, No. 23-CV-707 (KMK), 2024

---

[4] Mr. Roseboro's statement and declaration also contain broad statements that the Defendants created conditions that endangered his health, but these broad statements cannot be used to prove an individual Defendant's personal involvement. *See Tangreti*, 983 F.3d at 616 (finding that a plaintiff "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

WL 4252682, at *11 (S.D.N.Y. Sept. 20, 2024) (finding that a prison official was not acting deliberately indifferent when failing implement and follow stricter public health policies at the beginning of the COVID-19 pandemic, rather "his errors at best amount to negligence in the face of shifting parameters and guidance regarding how to combat a previously little[-]known virus rather than consciously turning a blind eye to any known danger" (citing *Chunn v. Edge*, 465 F. Supp. 3d 168, 204 (E.D.N.Y. 2020))).

For the same reason, unavailability during the relevant time period—from April 22, 2020, through May 2020, *see* Pl.'[s] SMF, ECF No. 93 ¶ 50; Reply at 7–8, Deputy Warden Blanchard could not have been personally involved in failing to address Mr. Roseboro's complaints in any way that would have proximately caused Mr. Roseboro's infection.

Accordingly, there is no genuine issue of material fact as to Deputy Warden Blanchard's personal involvement in Mr. Roseboro's Eighth Amendment failure to protect claim, and summary judgment will be granted in Deputy Warden Blanchard's favor on that claim.

### 2. The Claims Against Warden Bowles

Defendants argue that Mr. Roseboro has conceded Warden Bowles' lack of personal involvement in any of the Eighth Amendment claims against him and thus summary judgment should be granted on those claims. Reply at 7. For the failure to protect and conditions of confinement claims, Defendants argue that Mr. Roseboro's admissions to paragraphs 39, 40, 41, 44, 45, 46, 47, 48 and 49 of Defendants' Local Rule 56(a)(1) Statement concede Mr. Roseboro's personal involvement in those claims. For the deliberate medical indifference claim, Defendants argue that Warden Bowles deferred to the medical staff at Northern to treat all inmates including Mr. Roseboro and thus, he did not have personal involvement. Mot. at 21.

Mr. Roseboro has not responded with any argument or evidence in his opposition briefs supporting his Eighth Amendment claims against Warden Bowles.

The Court agrees with the Defendants.

Mr. Roseboro allegedly bases his failure to protect claim against Warden Bowles on complaints to "Warden Bowles that he was quarantined with another inmate who had different symptoms of COVID-19, but Warden Bowles failed to take any remedial action." Initial Review Order at 9. In paragraph 39 of Defendants' Local Rule 56(a)(1) Statement, however, Mr. Roseboro conceded that: "Defendant Bowles was not personally involved with how inmates were housed within the COVID-19 units," and similarly, in paragraph 41, Mr. Roseboro conceded that "Defendant Bowles has no knowledge of ever having received either a verbal or written complaint from Roseboro concerning his placement with a cellmate in the COVID-19 unit at NCI." *See* Pl.'[s] SMF, ECF No. 93 ¶ 39, 41. These admissions undermine any claim of Warden Bowles' personal involvement in the failure to protect claim, and thus summary judgment is warranted for that claim.

Mr. Roseboro allegedly bases his conditions of confinement claim against Warden Bowles on a grievance about the conditions at Northern being "ignored by Warden Bowles." Initial Review Order at 13. But, in paragraph 44 of Defendants' Local Rule 56(a)(1) Statement, Mr. Roseboro conceded that: "Prior to this lawsuit, Warden Bowles has no knowledge of receiving any complaints from the Plaintiff concerning the conditions in the COVID-19 unit in May and June, 2020" *See* Pl.'[s] SMF, ECF No. 93 ¶¶ 39, 44. Without knowledge of the complaints or some other accusation of indirect participation, Warden Bowles cannot have had personal involvement in the conditions of confinement claim. *See Provost*, 262 F.3d at 155 (2d Cir. 2001) (stating that personal involvement mean means direct participation such as "personal

participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." (citation omitted)).

Mr. Roseboro allegedly bases his deliberate indifference to his medical needs claim against Warden Bowles on "not being provided any medication for COVID-19 symptoms, migraines, breathing treatments, or water to bring down his fever, but was [rather] left to let the virus take its course." Initial Review Order at 15. But, in paragraph 47 of Defendants' Local Rule 56(a)(1) Statement, Mr. Roseboro conceded that: "Warden Bowles's understanding was that in May and June 2020, medical staff was onsite at NCI 24 hours per day, and 7 days per week, to assess and provide medical care for inmates within the COVID-19 unit, and he deferred to – and relied upon – the medical staff to provide the necessary care for inmates within the COVID-19 unit," and in paragraph 48, Mr. Roseboro also conceded that: "Warden Bowles has no knowledge of having ever received any verbal or written complaints from Plaintiff concerning Plaintiff's claim that he was not provided with medical care while housed in the COVID-19 unit at NCI." *See* Pl.'[s] SMF, ECF No. 93 ¶¶ 47–48.

Without knowledge of the complaints or some other accusation of indirect participation, Warden Bowles cannot have had personal involvement in Mr. Roseboro's failure to protect claim, his conditions of confinement claim, or his deliberate indifference claim. *See Provost*, 262 F.3d at 155 (2d Cir. 2001) (stating that personal involvement mean means direct participation such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." (citation omitted)).

Accordingly, in the absence of a genuine issue of fact as to Warden Bowles' personal involvement in any of the Eighth Amendment claims against him, summary judgment will be granted in Warden Bowles' favor on all of those claims.

### 3. The Claims Against Warden Faucher

There are no direct arguments from the parties on the issue of Warden Faucher's personal involvement, however, the Court will address his personal involvement as it has for the other Defendants.

Mr. Roseboro must allege that Warden Faucher was personally involved in his Eighth Amendment claims that the Defendants (1) failed to protect Mr. Roseboro by not adequately enforcing COVID-19 policies, and (2) subjected Mr. Roseboro to improper conditions of confinement by quarantining him with COVID-19 positive inmates in the Brooklyn gym and shackling him which prevented him from using the phone and showing showering. *See generally* Initial Review Order.

Mr. Roseboro properly alleges Warden Faucher's personal involvement in the failure to protect against COVID-19 claim because he alleges repeated direct instances where Warden Faucher spoke to him without a mask and where Mr. Roseboro made Mr. Faucher aware that COVID-19 protocols were not being followed. *See* Pl.'[s] SMF, ECF No. 93 ¶ 36 ("Warden Faucher was aware that staff members were not complying with the mask mandate even where social distancing was not possible. Further, Warden Faucher failed to wear a mask when speaking face to face with Mr. Roseboro on several occasions. Roseboro Decl. ¶¶ 7, 8, 9, 11, 12, 13, 14, 18, 19, 25, 43, 46."); Pl.'s SAF, ECF No. 93 at ¶ 5 ("Beginning in April 2020, Mr. Roseboro filed several written complaints addressed to Warden Faucher and Deputy Warden Blanchard concerning COVID-19 protocols and policies being ignored, unnecessary exposure,

and the improper or nonexistent screening of inmates and staff upon entry into the facility."); *id.* ("Mr. Roseboro spoke to Warden Faucher several times during his rounds, while he was not wearing a mask and social distancing was not possible, about the lack of adequate COVID-19 restrictions and the fact that they were not being followed by Brooklyn CI staff." (citing Exh. A at ¶ 12)).

But there is some question as to whether Mr. Roseboro has properly alleged Warden Faucher's personal involvement in the conditions of confinement in the Brooklyn gym during the COVID-19 pandemic. In his Statement of Material Facts, Mr. Roseboro states that "Mr. Roseboro informed Warden Faucher and other BCI staff that the gymnasium was not properly cleaned. Roseboro Decl. ¶¶ 25, 28, 29," Pl.'[s] SMF, ECF No. 93 ¶ 42, none of the paragraphs in his declaration, however, directly address whether Warden Faucher knew of the conditions in the gym, and had personal involvement in deciding to maintain them in the specific way alleged during the COVID-19 pandemic, rather than rely on directions from state health officials. *See* Roseboro Decl. ¶¶ 25, 28, 29 ("When I or any other inmate complained of the living conditions at Brooklyn CI, we were threatened by Brooklyn CI officials and Warden Faucher with being sent to northern CI as a scare tactic and further demonstration of deliberate indifference toward out well-being. . . . From May 18, 2020 to May 21, 2020, while being temporarily housed in the gym, I verbally complained to Warden Faucher during his rounds about being needlessly exposed to COVID-19 before testing positive for the virus. In fact, I was not tested for COVID-19 until May 19, 2020, after already being housed in the Brooklyn CI gymnasium for a substantial amount of time. . . . From May 18, 2020 to May 19, 2020, I lived in the Brooklyn CI gymnasium floor without showers, clean bedding, hygiene products, cleaning supplies, no social distancing, no air ventilation or toilet paper.").

Accordingly, Mr. Roseboro has not created a genuine issue of fact as to Warden

Faucher's personal involvement in his Eighth Amendment conditions of confinement claim

against him, and summary judgment will be granted on that claim.

**B.  The Remaining Eighth Amendment Claim Against Warden Faucher**

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual

punishments." U.S. Const. Amend. 8. The Supreme Court has long recognized that prison

officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical

needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the

alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the

defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate

harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting

*Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). It is not enough to allege medical

malpractice unless the malpractice involves culpable recklessness—actions that "evince[] a

conscious disregard of a substantial risk of serious harm." *Hill v. Curcione*, 657 F.3d 116, 123

(2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of

urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This

inquiry "requires the court to examine how the offending conduct is inadequate and what harm,

if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280.

Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992)) (alteration in original).

Prison conditions can constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a human need or posed "a substantial risk of serious harm" to his health or safety. *See Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347.

The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. Conditions are considered in combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304.

For both claims of indifference to medical needs or health and safety, the prisoner must allege facts sufficient to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Mr. Jordan must allege that the defendants were aware of a substantial risk that he would be seriously

harmed if they did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*). But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 834).

After granting summary judgment on Mr. Roseboro's Eighth Amendment claims against both Deputy Warden Blanchard and Warden Bowles, the only remaining Eighth Amendment claim is a failure to protect claim against Warden Faucher.

The Court will address the objective element and the subjective element of this claim in turn.

### 1. The Objective Element

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). "It is . . . undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 440 (D. Conn. 2020). In light of this knowledge, courts within this Circuit have recognized that COVID-19 can pose a substantial risk of serious harm to inmates if prison officials fail to take adequate measures against the spread of the virus. *See Jones v. Westchester County*, No. 20-cv-8542 (PMH), 2022 WL 1406591, at *3 (S.D.N.Y. May 4, 2022) (collecting cases); *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (collecting cases). Thus, at this stage of the case, there must be a genuine issue of fact as to whether there was a substantial risk of serious harm to Mr. Roseboro, considering the preventive measures taken by the Defendants. *See Gibson v. Rodriguez*, No. 3:20-cv-953 (KAD), 2021 WL 4690701, at *5 (D. Conn. Oct. 7, 2021)

("Under the objective component, there is no bright line test to determine whether a risk of serious harm is substantial for Eighth Amendment purposes. The court must assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk, *i.e.*, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. The court makes that determination in light of the steps the facility has already taken to mitigate the danger." (internal citations and quotations omitted)).

Warden Faucher argues that the "Defendants instituted measures at their respective facilities that conformed with guidance from DOC medical leadership, the DPH and the CDC, [Mr. Roseboro] cannot establish the objective prong." *See* Mot. at 16.

In response, Mr. Roseboro argues that despite the preventative measures taken there was still a serious risk from COVID-19 because his own complaints about ongoing risks were being ignored, COVID policies were not being enforced or followed, and the Wardens were housing individuals presumed of being positive of COVID-19 together. Opp'n at 9–12.

In construing the evidence and drawing all reasonable inferences in the light most favorable to Mr. Roseboro there is a genuine dispute of material fact regarding the COVID-19 prevention policies such that summary judgment on those claims is inappropriate, at least as to the objective prong.

### a. *COVID-19 Prevention Measures*

The Defendants rely on the declarations from Wardens Faucher, Blanchard, and Bowles as well as Mr. Roseboro's deposition transcript to show the different measures they took to protect the inmates against COVID-19. *See* Defs.' L.R. 56(a)(1) Statement, ¶ 6, 7-15, 20, ECF No. 87–2. These measures included: social distancing, compassionate releases, suspension of

visits and group activities, increased frequency of cleaning and sanitizing, social distancing and handwashing bulletins, mask mandates, quarantining for COVID-19 infected inmates or those suspected of being infected, and free soap for handwashing. *See id*.

In response, Mr. Roseboro cites to various points in his statement of facts and declaration, Warden Faucher's deposition, and other documents that allegedly show the Defendants' lack of response to different indices of the ongoing serious risk of COVID-19, including failing to enforce COVID-19 including a mask mandate despite being notified by Mr. Roseboro orally and in writing that his health was being placed in imminent harm, Warden Faucher failing to wear a mask when talking to Mr. Roseboro, ineffectively administering staff testing that allegedly led to the May 2020 COVID-19 outbreak, and not taking actions to protect Mr. Roseboro specifically as someone with respiratory conditions. *See* Opp'n at 10–11 (citing Pl.'[s] SMF, ECF No. 93 ¶¶ 2, 4, 6, 9, 10, 33, 34; Roseboro Decl., ECF No. 93-1 ¶¶ 6, 7, 9, 12, 13; Roseboro Request Form, ECF No. 94-2; Faucher Dep. Tr. 48:1-50:17, ECF No. 94-3).

Because there is a genuine dispute of material fact as to whether and how effectively policies and procedures for preventing the spread of COVID-19 were implemented by the Defendants, summary judgment is inappropriate, at least to this issue's objective prong. *See Sec. Ins. Co. of Hartford*, 391 F.3d at 82–83 (2d Cir. 2004) ("If as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper") (citation omitted); *see e.g., Browne v. Rodriguez*, No. 3:21-CV-329 (VAB), 2023 WL 1069477, at *9 (D. Conn. Jan. 27, 2023) (finding a genuine dispute of material fact such that summary judgment was not warranted when there was a factual dispute about effectiveness of COVID-19 prevention policies).

2.   The Subjective Element

To satisfy the subjective element a plaintiff "must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution'" by acting with deliberate indifference. *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, Mr. Roseboro must show that each Defendant "personally knew of and disregarded an excessive risk" to his health and safety. *Id.*

Defendants argue that  Mr. Roseboro's Eighth Amendment claim fails as a matter of law for not satisfying the subjective prong of the deliberate indifference analysis because: (1) the Defendants implemented COVID-19 prevention policies and cannot be said to have intentionally ignored the risk of harm, and (2) merely writing grievances about the COVID-19 policies is not enough to show that Defendants were on notice of the deficiencies in the COVID-19 policies. *See* Mot. at 22–30.

Mr. Roseboro argues in response that Defendants knew about the risk of harm still prevalent from COVID-19 due to their actions because he informed the Defendants in writing and orally about the risk of harm. Because of this Mr. Roseboro contends that there is a genuine dispute of material fact as to the subjective element of his Eighth Amendment claims.

The Court agrees.

Viewing the evidence in the light most favorable to Mr. Roseboro, this is one of those instances where prison officials could have been "ignoring" lapses in COVID-19 prevention policies. *Cf. Swain v. Junior*, 958 F.3d 1081, 1089-1090 (11th Cir. 2020) (while the adoption of extensive safety measures means that "the defendants' actions likely do not amount to deliberate

indifference," evidence that prison officials were "ignoring or approving" lapses in COVID-19 prevention policies could support a finding of deliberate indifference.).

Here, Mr. Roseboro identifies a number of times where the Defendants ignored the risk to Mr. Roseboro's health by "failing to remove obviously sick inmates from his unit, closely speaking to him without a mask, and transferring him to the gymnasium with other sick inmates who were exhibiting symptoms." Opp'n at 12 (citing Plaintiff's Statement of Additional Material Facts ("Pl's SAF"), ECF No. 93 ¶¶ 5, 6, 8, 9,). Some of these actions were against the COVID-19 prevention policies at the time, and all of them were complained about by Mr. Roseboro. *See* Opp'n at 12 ("Although the policy at Brooklyn CI only required staff to where masks where social distancing was not possible, Mr. Roseboro testified that he had several face-to-face conversations with Warden Faucher while he was not wearing a mask." (citing Pl.'s SAF, ECF No. 93 at ¶ 9 and Roseboro Decl., ECF No. 93-1 at ¶ 12)); Pl.'s SAF, ECF No. 93 at ¶ 5 ("Beginning in April 2020, Mr. Roseboro filed several written complaints addressed to Warden Faucher and Deputy Warden Blanchard concerning COVID-19 protocols and policies being ignored, unnecessary exposure . . ."); *id.* at ¶ 9 ("Mr. Roseboro spoke to Warden Faucher several times during his rounds, while he was not wearing a mask and social distancing was not possible, about the lack of adequate COVID-19 restrictions and the fact that they were not being followed by Brooklyn CI staff."); *id.* at ¶ 15 ("At or around May 5, 2020, Warden Faucher walked through Mr. Roseboro's unit, during which time, Mr. Roseboro pointed out the sick inmates who needed to be quarantined. In response, Warden Faucher told Mr. Roseboro to 'shut up' and 'mind my own business.'").

This record evidence is sufficient to create a genuine issue of material fact regarding the subjective prong of his deliberate indifference claims.[5] *See e.g.*, *Pierce v. Rodriguez*, No. 3:20-CV-1755 (SVN), 2023 WL 2646825, at *10–11 (D. Conn. Mar. 27, 2023) (holding that there was a genuine issue of material fact regarding whether correctional officers acted with deliberate indifference by moving inmate into a cell containing inmates that were infected with COVID-19 after inmate testified that he made the corrections officers aware of the risk) (citing three other District of Connecticut cases where there was a genuine dispute of material fact of prison official's deliberate indifference in light of evidence that COVID-19 precautions were being followed: *Nazario v. Thibeault*, No. 3:21-CV-216-VLB, 2022 WL 2358504, at *6 (D. Conn. June 30, 2022), *aff'd*, No. 22-1657, 2023 WL 7147386 (2d Cir. Oct. 31, 2023); *Hackett v. Rodriguez*, No. 3:21-CV-00328 (VLB), 2022 WL 16949369, at *9 (D. Conn. Nov. 15, 2022); *Browne v. Rodriguez*, No. 3:21-CV-329 (VAB), 2023 WL 1069477, at *10 (D. Conn. Jan. 27, 2023)).

### 3. Causation

"[I]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir.

---

[5] Defendants argue that many of the statements in Mr. Roseboro's declaration in support of his opposition to the summary judgment motion should be stricken (and that the paragraphs in his Statement of Additional Material Facts that rely on them should be treated as admitted) because they "contain assertions that contradict his Complaint, his deposition testimony, or otherwise lack a sufficient foundation or amount solely to a conclusion or opinion." Reply at 4. But the Court does not need to reach this issue because the instance of Mr. Roseboro complaining to Warden Faucher about the failure to enforce the masking policy would be enough to support the subjective prong of deliberate indifference, and that example is consistent with Mr. Roseboro's deposition, and is not solely within an affidavit. *See* Reply at 2–3 (citing Roseboro Depo. Tr., 38:25-39:21, ECF No. 87-6); *Brown v. Reinauer Transportation Companies, L.P.*, 788 F. App'x 47, 49 (2d Cir. 2019) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial." (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996))); *see e.g., Pierce*, 2023 WL 2646825, at *10–11 (citing three other District of Connecticut cases to support its finding that evidence of a failure to follow COVID-19 precautions can give rise to a genuine issue of material fact).

1998); *Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir. 1999) ("[a] § 1983 action, like its state

tort analogs, employs the principle of proximate causation" (citing *Gierlinger v. Gleason*)).

"[T]he Supreme Court has made it crystal clear that principles of causation borrowed from tort

law are relevant to civil rights actions brought under section 1983." *Warner v. Orange County

Dep't of Probation*, 115 F.3d 1068, 1071 (2d Cir. 1996) (quotations omitted).

The Defendants argue that Mr. Roseboro has not provided any evidence that the

Defendants' actions caused his infection. Reply at 4–5.

Mr. Roseboro argues that because "[p]ursuant to Brooklyn CI COVID-19 policies, as of

March 13, 2020, no outside visitors were permitted entry into the facility . . . an inference should

be drawn that the outbreak which occurred at Brooklyn CI in May 2020 [which allegedly led to

Mr. Roseboro's infection] was the proximate result of Warden Faucher's failure to properly

enforce staff testing measures allowed an outbreak to occur." Opp'n at 3.

The Court disagrees.

It is Mr. Roseboro's burden to prove that the Defendants actions was a proximate cause

of his infection. *See Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) ("[I]n all § 1983

cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's

injury."); *see e.g., McAfee v. Naqvi*, No. 3:14-CV-410 (VAB), 2017 WL 3184171, at *7 (D.

Conn. July 26, 2017) (holding that for a medical deliberate indifference claim, the plaintiff "must

show that the alleged delay in treatment caused the medical injuries for which he seeks

compensation.").

Accordingly, while Mr. Roseboro has argued that an "inference" of causation should be

drawn, without adducing any evidence supporting his proposition that the Defendants cause his

COVID-19 infection, the Defendants are entitled to summary judgment.[6] *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) ("A defendant is entitled to summary judgment where the plaintiffs have failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in [the plaintiffs'] favor on an essential element of a claim on which the plaintiffs bear the burden of proof."); *see e.g.*, *Mellin v. Nerai LLC*, No. 21 CIV. 7789 (LGS), 2024 WL 1075510, at *4 (S.D.N.Y. Mar. 12, 2024) (finding at summary judgment that "[a]lthough neither side presents evidence regarding COVID-19 transmissibility, the burden is on Plaintiff at trial to establish causation by a preponderance of the evidence. Without any evidence to support Plaintiff's position, no reasonable jury could find that Mr. Mellin's death was proximately caused by Defendant.").

While this record is insufficient to create a genuine issue of fact as to whether Warden Faucher caused Mr. Roseboro to contract COVID-19, there is a genuine issue of fact as to whether Warden Faucher was deliberately indifferent to Mr. Roseboro's fear for his life due to the danger of him contracting COVID-19.

Warden Faucher allegedly failed to wear a mask when talking with Mr. Roseboro on several occasions. *See supra* at 14–16. As to the objective standard, there is a genuine issue of fact as to whether failing to wear a mask while speaking to inmates created a serious risk of harm to Mr. Roseboro. *See supra* at 18–21; *cf. Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (recognizing that the objective standard requires conditions which "either alone or in combination, pose an unreasonable risk of serious damage to his health."). As to the subjective

---

[6] The Court also notes that Mr. Roseboro's inference that the failure to correctly test prison staff caused Mr. Roseboro's injuries may not be a reasonable one because, as Defendants note, prison staff were not the only ones to enter and exit the facilities since "inter-facility transfers and transports to court and/or hospitals were still occurring during COVID-19 operations[.]" Reply at 6 (citing Brooklyn's Influenza Pandemic Operations Policy, ECF No. 87-14).

standard, there is also a genuine issue of fact as to whether Warden Faucher was deliberately

indifferent to the risk of harm that he subjected Mr. Roseboro too by not wearing a mask, even

when he was made aware of the risk by Mr. Roseboro himself. *See supra* at 21–24; *cf. Farmer*,

511 U.S. at 835 (recognizing that the subjective standard requires that "the official must be both

be aware of facts from which the inference can be drawn that a substantial risk of serious harm

exists, and he must also draw that inference."). Indeed, there is sufficient evidence in this record

of a genuine issue of fact as whether Warden Faucher, by not wearing a mask, caused Mr.

Roseboro to fear for his life due to the danger of COVID-19. *See* Roseboro Decl., ECF No. 93-1

¶ 12–14 ("I spoke to Warden Faucher several times during his rounds, while he was not wearing

a mask and social distancing was not possible, about the lack of adequate COVID-19 restrictions

and the fact that they were not being followed by Brooklyn CI staff. . . . I believe that Defendants

deliberately created conditions which allowed COVID-19 to spread rapidly throughout Brooklyn

CI which seriously endangered my health. . . . Defendants created an environment that caused

me to fear for my life due in part to my asthmatic condition").

Accordingly, Mr. Roseboro has created a genuine issue of fact as to whether Warden

Faucher was deliberately indifferent as to whether Mr. Roseboro could contract COVID-19 from

him not wearing a mask in Mr. Roseboro's presence.

### C.  The Intentional Infliction of Emotional Distress Claim

Under Connecticut law, four elements must be established to prevail on a claim for

intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional

distress or that he knew or should have known that emotional distress was the likely result of his

conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was

the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff

was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (Conn. 2000) (internal quotation marks omitted). Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by decent society." *Reyes v. City of Bridgeport*, 152 Conn. App. 528, 543 n.13 (Conn. App. 2014).

There is a "high threshold" for extreme and outrageous conduct in Connecticut law. *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (Conn. 2012); *see also Stein v. Allen*, No. FSTCV176033418S, 2018 WL 4038364, at *3 (Conn. Super. Ct. Aug. 2, 2018) (noting that the trial court has a "gatekeeper function" in IIED claims). The Connecticut Supreme Court has held that conduct will only be considered extreme and outrageous under state law if it "exceeds all bounds usually tolerated by decent society." *Appleton*, 254 Conn. at 210–11 (internal quotation marks and citation omitted). And, it is the defendant's "conduct, not the motive behind the conduct[,]" which courts must evaluate in making this determination. *See Armstead v. Stop & Shop Cos., Inc.*, No. 3:01-cv-1489, 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003) (citation omitted). "Even conduct which is unlawful may not be labeled 'extreme and outrageous' unless it has a natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subject to it." *Hamilton v. Town of Hamden*, No. 3:08-cv-164 (PCD), 2008 WL 4999301, at *10 (D. Conn. Nov. 19, 2008) (internal quotation marks and citation omitted).

The Defendants argue that they are entitled to summary judgment on Mr. Roseboro's IIED claims because Mr. Roseboro does not allege any affirmative misconduct that the Defendants committed nor present evidence of severe emotional distress. Mot. at 34.

In response, Mr. Roseboro argues that because reasonable minds could differ on whether or not Defendants' conduct was extreme or outrageous, Defendants should not be entitled to summary judgment. Opp'n at 16.

The Court disagrees.

### i.    Failure to Act

"Connecticut courts have held that a failure to act does not rise to the level of 'extreme and outrageous behavior.'" *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *16 (D. Conn. Feb. 2, 2018) (citing *Germano v. Dzurenda*, No. 3:09CV1316 SRU, 2011 WL 1214435, at *21 (D. Conn. Mar. 28, 2011) (dismissing prisoner's claim for intentional infliction of emotional distress for failure to state a claim where "there has been no allegation of affirmative misbehavior" by his defendant psychiatrists, only allegations that they "failed to take seriously [plaintiff prisoner's] threats of suicide"); *Giard v. Town of Putnam*, No. CV085002754S, 2008 WL 5481273, at *11 (Conn. Super. Ct. Dec. 3, 2008) (holding defendant school guidance counselor's conduct "could not, as a matter of law, be extreme and outrageous" because "[t]he alleged misconduct is the mere failure to act on unspecified information that the decedent was suicidal")).

Defendants argue that Mr. Roseboro seeks to prove his IIED claim only through failures to act, which would not be enough to sustain an IIED claim. *See* Mot. at 34; *Abrams*, 2018 WL 691717, at *16 ("Connecticut courts have held that a failure to act does not rise to the level of extreme and outrageous behavior") (internal quotation omitted). As Mr. Roseboro explains in his opposition, however, his claim is also based on affirmative acts like "subjecting him to maskless encounters." Opp'n at 16.

Accordingly, Mr. Roseboro has sufficiently alleged a failure to act in support of his IIED.

ii.    *Severe Emotional Distress*

In Connecticut, severe emotional distress is distress that is "so severe that no reasonable person could be expected to endure it." *Tomby v. Cmty. Renewal Team, Inc.*, No. 3:09-cv-1596 (CFD), 2010 WL 5174404, *7 (D.Conn. Dec. 15, 2010) (quoting *Buster v. City of Wallingford*, 557 F. Supp. 2d 294, 302 (D. Conn. 2008).

Other than his anxiety over getting COVID-19, Mr. Roseboro has not alleged any severe emotional distress connected with the Defendants' actions. Opp'n at 16. Anxiety, with nothing more, is not enough to allege severe emotional distress. *See Stubbs v. Gerken*, No. 3:21CV01525(SALM), 2022 WL 4585296, at *17 (D. Conn. Sept. 29, 2022) (finding that plaintiffs had not properly alleged severe emotional distress when that alleged to have suffered insomnia, anxiety, nausea, and loss of appetite) *see cf. Groth v. Grove Hill Med. Ctr., P.C.*, No. 3:14-CV-01563 RNC, 2015 WL 4393020, at *6 (D. Conn. July 15, 2015) (finding that severe emotionally distress was properly alleged when the Plaintiff alleged that they suffered anxiety, depression, sleeplessness, nausea, headaches, and stress); *Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 12 (D. Conn. 2011) (finding that severe emotionally distress was properly alleged when the Plaintiff alleged that they suffered severe trauma, sleeplessness, loss of appetite, and damage to his self-esteem and sense of self-worth).

Without evidence of severe emotional distress, Mr. Roseboro has not created a genuine issue of material fact and the Defendants are entitled to summary judgment on Mr. Roseboro's IIED claim.

Accordingly, Mr. Roseboro's intentional infliction of emotional distress claim will be dismissed.

### C. Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff need not point to a prior decision that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

"The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)). It thus "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken— decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Qualified immunity does not apply, however, when it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

31

For the reasons state above, Mr. Roseboro has only claim remaining in this case: his deliberate indifference claim against Warden Faucher for not wearing a mask, while talking to Mr. Roseboro causing Mr. Roseboro to fear for his life due to the danger of contracting  COVID-19.[7]

The Defendants argue that they are entitled to qualified immunity because it was not clearly established at the time of their conduct that failing to enforce a mask mandate constitutes deliberate indifference to an airborne virus, and the Defendant's actions were objectively reasonable. *See* Mot. at 38–39.

In response, Mr. Roseboro argues that it was clearly established that individuals in custody have a right of protection from heightened exposure to a serious communicable disease, and that Warden Faucher's failure to enforce and personally abide by DOC's mask mandate when speaking face-to-face with Mr. Roseboro was a callous demonstration of deliberate indifference toward Mr. Roseboro's health and wellbeing. Opp'n at 19–22.

The Court agrees.

The qualified immunity analysis in this case turns on whether Defendants' actions in response to the COVID-19 pandemic were reasonable efforts to comply with their obligation to protect inmates from the serious risk of harm posed by the disease. *See Hackett v. Rodriguez*, No. 3:21-CV-00328 (VLB), 2022 WL 16949369, at *11 (D. Conn. Nov. 15, 2022) ("Even at the beginning of the pandemic in March 2020, a reasonable official would have realized that

---

[7] To the extent that a qualified immunity analysis is necessary as to Mr. Roseboro's conditions of confinement claim against Warden Faucher – in the event that Mr. Roseboro had adequately pled Warden Faucher's personal involvement with respect to this claim – there was no clearly established law at the time of these administrative decision such that prison officials, like Warden Faucher, would have known that the placement of inmates suspected of having COVID-19 in the Brooklyn gym and the conditions related to their placement there violated the law. *See, e.g., Gibson v. Cuomo,* No. 20-cv-1455-JLS-MJR, 2023 U.S. Dist. LEXIS 97669, at *24 (W.D.N.Y. Mar. 24, 2023)("it would be very difficult to demonstrate that any such [Eight Amendment] right was clearly established at the very outset of the pandemic."). Accordingly, qualified immunity would have attached and precluded liability against him.

COVID-19 is a serious infectious disease from which prison officials had a duty to protect inmates.").

When a prison official, such as Warden Faucher, speaks to an individual in custody without a mask during an outbreak of an infectious disease against the guidance of the CDC and the policies of the prison itself, he is not engaged in reasonable efforts to comply with their obligation to protect individuals in custody from the serious risk of harm posed by the disease.

As a result, "it is at least plausible that [Defendant's actions were] objectively unreasonable in light of clearly established law at the time regarding exposure to infectious diseases." *Zeigler v. Annucci*, No. 23-CV-707 (KMK), 2024 WL 4252682, at *13 (S.D.N.Y. Sept. 20, 2024) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (holding Eighth Amendment does not permit prison officials to be "deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) ("[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease[.]"); *and Lareau v. Manson*, 651 F.2d 96, 109 (2d Cir. 1981) (stating that the "failure to adequately screen a screen newly arrived inmates for communicable diseases" would constitute "deliberate indifference to serious medical needs")).

Accordingly, the Court will deny Defendants' motion for summary judgment on qualified immunity grounds.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.

Mr. Roseboro's claim for deliberate indifference as to his serious medical needs against Warden Faucher survives on the limited issue of whether Warden Faucher's alleged meetings with  Mr. Roseboro without a mask during a peak COVID-19 period created a basis for liability.

Summary judgment is granted to all other claims.

**SO ORDERED** at New Haven, Connecticut, this 13th day of December, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE